SCHAFFER, a/k/a Robert J. Schaeffer, Plaintiff in error,
v. STATE, Defendant in error.

*No. 75–785–CR. Argued December 2, 1976.—*
*Decided February 15, 1977.*
(Also reported in 250 N. W. 2d 326.)

For the plaintiff in error the cause was argued by *Jack E. Schairer*, assistant state public defender, with whom on the briefs was *Howard B. Eisenberg*, state public defender.

For the defendant in error there was a brief by *Bronson C. La Follette*, attorney general, and *Charles D. Hoornstra*, assistant attorney general, and oral argument by *William L. Gansner*, assistant attorney general.

HANLEY, J. Two issues are presented on this review:

1. Should the trial court have suppressed the physical evidence because there was not probable cause for defendant's arrest?

2. Should the trial court have suppressed testimony of the pretrial lineup identification because the lineup followed an unconstitutional arrest or because the identification procedures were unconstitutionally suggestive?

*Validity of Arrest*

The defendant contends there was no probable cause for his arrest, and therefore, the evidence obtained in the subsequent search should have been suppressed.

Prior to going on duty on January 8, 1975, Officer Vande Berge, the arresting police officer, was shown a teletype message from the Oshkosh Police Department which stated that a drugstore had been robbed in Oshkosh on January 7, 1975. The items stolen were listed and descriptions of the two suspects were included. One suspect was identified as LeRoy Chapin, but the other, although described, was not identified by name. Officer Vande Berge, however, was informed by a Fond du Lac police captain that Robert J. Schaffer was suspected as

Chapin's accomplice in the robbery and that the two suspects might be found together. Photographs of both Schaffer and Chapin had been attached to the teletype message, and Vande Berge viewed them prior to going out on patrol at 11:00 p.m. on January 8, 1975.

At approximately 4:15 a.m. on January 9, 1975, Vande Berge observed two male subjects on Main Street in Fond du Lac. After notifying headquarters via radio, he stopped the two men and asked for identification. Vande Berge testified he stopped them because of the early hour and the fact he had seen neither of them prior to that morning. When asked for identification, one man told Vande Berge he had no identification, but that his name was Robert Schaffer. It then occurred to the officer that this person might be the Robert Schaffer suspected in the Oshkosh robbery. The other man produced a California identification card identifying him as James LeRoy Chapin. Vande Berge contacted headquarters again to state he had both subjects and to check if an arrest warrant was still outstanding on Chapin. The dispatcher at headquarters advised Vande Berge that Oshkosh was still looking for the two suspects in the robbery. After receiving this information, Vande Berge placed both men under arrest.

These facts surrounding the arrest of the defendant show that although the arresting officer had not personally acquired factual data which could establish probable cause that the defendant had committed a crime, the officer had relied upon collective information in the Fond du Lac Police Department, which directly implicated the defendant. An arresting officer may rely on all collective information in the police department, and, acting in good faith on the basis of such information, may assume at the time of apprehension that probable cause has been established. *State v. Mabra,* 61 Wis.2d 613, 625, 213 N.W.2d 545, 551 (1974) ; *State v. Taylor,* 60 Wis.2d 506, 515, 210

N.W.2d 873, 878 (1973). Thus, an officer, such as Vande Berge here, who in good faith relies upon such collective information, is legally justified to make an arrest.

Such legal justification, however, cannot alone constitute probable cause for such an arrest, for it is necessary that the officer's underlying assumption of probable cause be correct. *State v. Taylor, supra* at 515–16, 210 N.W.2d at 878. Where an officer relies upon a police communication in making an arrest, in the absence of his personal knowledge of probable cause, the arrest will only be based on probable cause, and thus valid, when such facts exist within the police department. *Desjarlais v. State,* 73 Wis.2d 480, 491, 243 N.W.2d 453, 459 (1976); *State v. Shears,* 68 Wis.2d 217, 253, 229 N.W.2d 103, 121 (1975); *State v. Mabra, supra* at 625, 213 N.W.2d at 551; *State v. Taylor, supra* at 515–16, 210 N.W.2d at 878. Thus, the question of this underlying probable cause arises in this case.

In conjunction with the preliminary examination, a hearing upon the defendant's motion challenging probable cause for his arrest was held. At this hearing Officer Vande Berge testified as to the circumstances surrounding and his knowledge at the time of the defendant's arrest. No evidence was introduced by the state establishing the facts constituting probable cause for the defendant's arrest known by the Oshkosh Police Department, which had communicated to the Fond du Lac Police Department the information implicating the defendant in the robbery with Chapin. The record also shows that defense counsel at this hearing did not make a point that this underlying probable cause had not been shown, but rather only argued that the facts established did not prove probable cause. Thus, due to these obvious oversights on the part of both counsel, the evidence presented at the hearing did not encompass this question of underlying probable cause.

Nevertheless, the record before the court establishes that the Oshkosh Police Department did possess enough information prior to the defendant's arrest to constitute probable cause for his arrest. In fact, it is apparent that the communications to the Fond du Lac Police Department were based upon this information obtained by the police in Oshkosh immediately after the crime. The sworn statement of Detective Lyle Miller of the Oshkosh Police Department, which statement constitutes the criminal complaint against the defendant in this matter, shows that Detective Miller talked to Violet Chapin, mother of LeRoy Chapin, on January 8, 1975, one day after the crime was committed and one day before the defendant's arrest. Mrs. Chapin informed Miller that at approximately 6:15 p.m. on January 7, 1975, only fifteen minutes before the robbery took place, she observed her son and another man leave her residence, which is three blocks from the pharmacy involved. Mrs. Chapin had possession of a wallet which belonged to this other man, which wallet contained a driver's license of Robert J. Schaffer. Mrs. Chapin's description of the man with her son matched the description, given by witnesses at the pharmacy, of the robber who accompanied Chapin. The description of Robert J. Schaffer on the driver's license also matched these descriptions.

This court has stated probable cause for an arrest is less than that required for a bindover and is less than the quantum of evidence necessary for a criminal conviction. *State v. Williams*, 47 Wis.2d 242, 248, 177 N.W.2d 611, 614-15 (1970). On the basis of the information obtained by the Oshkosh Police Department soon after the robbery, it certainly was reasonable to believe Robert J. Schaffer was the man who joined with LeRoy Chapin in the robbery of the pharmacy. The record shows this information was the basis for the communication to the

Fond du Lac Police Department that Robert Schaffer was suspected of a robbery in Oshkosh. Officer Vande Berge's arrest of the defendant was in good faith reliance upon this communication. In that adequate information establishing probable cause existed within the police network here involved, this arrest of the defendant was valid, and the trial court properly denied the defendant's pretrial motions to suppress certain evidence obtained as a result of the arrest.

*Lineup Identification*

Having concluded above that the defendant's arrest was not illegal, it is not necessary to consider the defendant's claim that his identification in the lineup should be suppressed as flowing from the illegal arrest. Moreover, this court has held that an out-of-court identification of an accused in a lineup may not be suppressed upon the ground that it is the fruit of an illegal detention. *State v. Brown,* 50 Wis.2d 565, 570, 185 N.W.2d 323, 326 (1971) ; *Massen v. State,* 41 Wis.2d 245, 252, 163 N.W.2d 616, 620 (1969). The reasoning for this rule is stated in *State v. Brown* at 569–70, 185 N.W.2d at 326 :

"The initial question is whether the out-of-court identifications were made under illegal circumstances. Because a person is illegally arrested, it does not follow necessarily a confrontation and identification are thereby tainted with illegality. To become tainted, the identification must be caused by or be the result of the illegal arrest. Here, the arrest furnished only the occasion for the identification; it did not suggest or influence it. In an analogous situation, we stated in *Phillips v. State* (1966), 29 Wis.2d 521, 139 N.W.2d 41, that an unreasonable detention gave rise to an exclusionary rule in respect to an admission and statements on the theory the unreasonableness conclusively caused the accused to react as he did as a matter of law. Such rule was held not applicable to a lineup because an unreasonable detention does not cause the lineup.

*See Massen v. State* (1969), 41 Wis.2d 245, 252, 163 N.W.2d 616; and *Quinn v. State,* ante, p. 101, 106, 183 N.W.2d 64. The illegal arrest, while it affected Brown to the point of making a confession, did not cause the confrontation or cause him to do anything in respect to his identification. Hence an identification otherwise valid does not come under the exclusionary rule because the arrest was illegal."

Therefore, the only remaining challenge to the admissibility of the lineup identification is defendant's claim that the identification procedures were so unnecessarily suggestive as to result in a denial of due process of law. *Fells v. State,* 65 Wis.2d 525, 536, 223 N.W.2d 507, 513–14; *Holmes v. State,* 59 Wis.2d 488, 493–94, 208 N.W. 815, 818 (1973). The defendant has the burden of proof that the procedure was unnecessarily suggestive. *Fells v. State, supra* at 536, 223 N.W.2d at 513.

The defendant argues that the identification procedures were unduly suggestive for the following reasons: the lineup was conducted by inexperienced personnel; the defendant was the only participant wearing a gold earring; defendant was the only participant with a scar over his left eye; and defendant was the only participant wearing tight pants.

The experience of the persons conducting a lineup certainly cannot relate to the suggestiveness of the procedure.

The record does not show that defendant was the only participant in the lineup who wore a gold earring, although it would seem to be likely that he was, or who had a scar over his left eye. Furthermore, although the witnesses to the robbery stated they noticed these features during the robbery, none of them testified that they noticed or were influenced by these features at the lineup.

The parties stipulated that defendant was the only participant wearing tight pants, but nothing indicates that this resulted in any suggestiveness. The record does not indicate that either of the robbers had been identified as wearing tight pants, and no witness stated he or she took notice of defendant's pants at the lineup.

The controlling consideration is whether under the totality of the circumstances, the identification was reliable. *State v. Russell,* 60 Wis.2d 712, 721, 211 N.W.2d 637, 641 (1973). What is required is an attempt to conduct a fair lineup, taking all steps reasonable under the circumstances. *Wright v. State,* 46 Wis.2d 75, 86, 175 N.W.2d 646, 652 (1970). The police are not required to search for persons with facial features identical to those of the accused. *Wright v. State, supra.*

In the instant case there is no evidence indicating that the lineup was arranged in any way to make the defendant stand out or to appear to match the witnesses' descriptions of the robbers. In fact the police officers here clearly made an effort to provide a fair lineup. All the participants were requested to wear jackets similar to the defendant's. Each wore a scarf across his face. The witnesses separately viewed the lineup. It does not appear that any of the witnesses were psychologically influenced by any aspect of this indentification procedure. Considering the totality of the circumstances, the lineup has not been shown to be unduly suggestive.

*By the Court.*—Judgment affirmed.