IN RE the PATERNITY OF CODEY M.R.:

STATE of Wisconsin and Michelle R., Petitioners-
Respondents,

v.

JOE C., Respondent-Appellant.

Court of Appeals

*No. 93–0083. Submitted on briefs June 10, 1994.—Decided
July 27, 1994.*

(Also reported in 522 N.W.2d 222.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Ann Auberry* of Milwaukee.

On behalf of the petitioners-respondents, the cause was submitted on the brief of *Toni M. Kile* of the Racine County Child Support Department of Racine.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

ANDERSON, P.J. Joe C. appeals from a judgment entered upon a jury's finding that he was the father of Codey M.R. Joe argues on appeal that he was denied equal protection when the State used its peremptory strikes to remove one African-American male

and all remaining males from the jury pool. Based on the United States Supreme Court cases of *Batson v. Kentucky,* 476 U.S. 79 (1986), and the recently decided *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. —, 114 S. Ct. 1419 (1994), we agree that he was denied equal protection related to the gender-based peremptory strikes and, therefore, reverse.

The State, by the Racine County Child Support Agency, filed a paternity action against Joe alleging that he was the father of Codey. Joe, Codey and Codey's mother, Michelle, submitted to blood tests to determine the probability of paternity. Both Michelle and Joe are white. The court refused to enter judgment based on the blood test results and the case went to trial by jury.

The jury pool consisted of twelve persons; six potential jurors needed to be eliminated to result in the six-person jury. The pool consisted of eight women and four men. One woman and one man were African-American.

Each side was allowed three peremptory strikes. The State used its strikes to remove three men, including the African-American male. Joe's counsel used its peremptory strikes to remove the last remaining man and two women. The six remaining individuals were sworn as jurors by the court. Thus, the jury consisted of six women, one of whom was African-American.

Joe's counsel objected to the State's use of its peremptory strikes. Specifically, counsel argued that a white defendant is entitled to an explanation for the striking of African-American jurors under *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614 (1991). Additionally, counsel stated an objection related to the systematic striking of all males from the jury by the State. The trial court rejected both contentions. The case continued to trial where the jury found that Joe

was Codey's father and the court entered judgment based on this verdict. Joe appeals.

Joe raises the same argument on appeal as he did below: that his equal protection rights were violated by the court's failure to ascertain a nondiscriminatory basis for the State's peremptory strikes. Purposeful racial and gender discrimination in jury selection violates a litigant's right to equal protection because it denies him or her the protection that a trial by jury is intended to secure. *Batson,* 476 U.S. at 86; *see also J.E.B.,* 511 U.S. at —, 114 S. Ct. at 1430. *Batson* held that a defendant's right to an impartial jury is violated when a venireperson of the same race as the defendant is excluded from the jury for that reason. *Batson,* 476 U.S. at 86. The *Batson* rule now applies to peremptory challenges of members of the jury panel though they are of a different race than the defendant, *see Powers v. Ohio,* 499 U.S. 400, 402 (1991), peremptory challenges in a civil proceeding, *see Edmonson,* 500 U.S. at 630, and peremptory challenges of members excluded on the basis of gender, *see J.E.B.,* 511 U.S. at —, 114 S. Ct. at 1430.

The United States Supreme Court has outlined a three-step process for evaluating claims that a party has used peremptory challenges in a manner violating the Equal Protection Clause. First, the objecting party must make a prima facie showing of purposeful discrimination by showing that the opposing party has exercised peremptory challenges on the basis of race or gender. *Hernandez v. New York,* 500 U.S. 352, 358 (1991) (citing *Batson,* 476 U.S. at 96-97). Second, once the required showing is made, the burden shifts to the opposing party to articulate a race- or gender-neutral

explanation for striking the jurors in question. *Id.* at 358-59. Third, the trial court must determine whether the objecting party has carried the burden of proving purposeful discrimination. *Id.* at 359. Thus, unless a defendant makes the prima facie showing that the prosecutor has used peremptory challenges on the basis of race or gender, steps two and three of the analysis are not reached. *See State v. Lopez,* 173 Wis. 2d 724, 728, 496 N.W.2d 617, 619 (Ct. App. 1992).

The trial court held that Joe did not make a prima facie showing for his objections based upon either race or gender. The trial court's ruling on whether the objecting party has made a prima facie case is subject to the "clearly erroneous" standard of review. *Id.* at 729, 496 N.W.2d at 619. Where multiple inferences are possible from credible evidence, we must accept those drawn by the trial court. *Id.* Determining whether a prima facie case has been established requires consideration of all relevant circumstances, including whether there has been a pattern of strikes against members of a particular race or gender, whether the excluded jurors were suitable candidates for exclusion by the opposing party, *see id.* at 730, 496 N.W.2d at 619, and the opposing party's questions and statements during voir dire, *see State v. Walker,* 154 Wis. 2d 158, 173, 453 N.W.2d 127, 133, *cert. denied,* 498 U.S. 962 (1990).

We first address Joe's claim that his equal protection rights were violated by the court's failure to ascertain a nondiscriminatory basis for the State's peremptory strike of the African-American juror. We conclude that the court's conclusion that Joe failed to make a prima facie showing is not clearly erroneous.

Joe's reply brief argues that a prima facie showing of racial discrimination was shown where the State used one of its peremptory strikes to remove an African-American male from the jury panel, thereby eliminating fifty percent of the African-Americans on the panel. As support, Joe looks to *United States v. Hoelscher,* 914 F.2d 1527 (8th Cir. 1990), *cert. denied, Meriwether v. United States,* 500 U.S. 943 (1991). However, *Hoelscher* never addressed whether the trial court was correct in holding that Hoelscher stated a prima facie case of discrimination. Instead, *Hoelscher* was concerned with whether the trial court abused its discretion in holding that the government stated race-neutral reasons for its strike. *See id.* at 1540-41. In addition, the trial court's decision was based upon a fact not present here—the elimination of three African-American jurors—which could show a pattern of discrimination. *See Lopez,* 173 Wis. 2d at 731 n.4, 496 N.W.2d at 620 (recognizing that a pattern of striking may alone supply an inference of purposeful discrimination).

We recognize that the elimination of even one juror on the basis of race or gender offends the Equal Protection Clause. *See Walker,* 154 Wis. 2d at 173 n.5, 453 N.W.2d at 133. However, the elimination of a member of a particular group, with nothing more, does not make a prima facie showing of discrimination. If that were the rule, we would effectively eliminate the peremptory challenge. Because every person of a jury panel is of a particular race or sex, it could be argued that the elimination of *any* person from the panel was purposeful discrimination, forcing the opposing party to articulate a race- or gender-neutral reason for the

strike.[1] We will not and cannot endorse such a rule. Accordingly, we conclude that the trial court's decision that Joe did not make a prima facie case for racial discrimination was not clearly erroneous.

We next address Joe's argument that he made a prima facie showing of gender discrimination. The trial court's decision in the State's favor was not based upon the court's perceptions at voir dire of the State's lack of discriminatory intent. *See Lopez,* 173 Wis. 2d at 729, 496 N.W.2d at 619. Instead, the court's decision was based upon its conclusion that *Batson* and the auspices of the Equal Protection Clause did not forbid peremptory challenges on the basis of gender. Therefore, the trial court's conclusion is one of law; we review this de novo. *State v. Turner,* 136 Wis. 2d 333, 344, 401 N.W.2d 827, 832 (1987).

At the time of the trial court's decision, *J.E.B.* had not yet been decided. As discussed earlier, *J.E.B.* extends *Batson* to peremptory strikes based on gender. Accordingly, we must reverse the judgment and remand to the trial court.

Upon remand the trial court shall first answer, pursuant to *Hernandez,* 500 U.S. at 358, whether Joe has made a prima facie showing of purposeful discrimination by the State exercising its peremptory

---

[1] *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S.—, 114 S. Ct. 1419, 1428 (1994), makes clear that it is not only historically discriminated against groups which may fall under *Batson v. Kentucky,* 476 U.S. 79 (1986). In *J.E.B.,* the stricken jurors were males. The implication is that the offending action is a strike based upon racial or gender considerations; any race or either sex is protected from such action.

challenges on the basis of gender. If the court concludes that Joe has not made the requisite prima facie showing under *Hernandez*, then the trial court shall reinstate the original judgment.

However, if the trial court concludes that Joe has made the requisite prima facie showing under *Hernandez*, the court shall then complete the *Hernandez* analysis. If the court ultimately concludes that the State has engaged in purposeful discrimination, then the court shall order a new trial.

*By the Court.*—Judgment reversed and cause remanded with direction.