STATE of Wisconsin, Plaintiff-Respondent,

v.

James JAGODINSKY, Defendant-Appellant.

Court of Appeals

*No. 96–2927–CR. Submitted on briefs January 27, 1997.—Decided March 26, 1997.*

(Also reported in 563 N.W.2d 188.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Dennis Schertz* of *Schertz Law Office* of Oshkosh.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas J. Gritton*, deputy district attorney.

Before Snyder, P.J., Brown and Nettesheim, JJ.

BROWN, J.   James Jagodinsky appeals from a judgment of conviction for violating a harassment injunction. Jagodinsky claims that the trial court erred when it denied his objection to the prosecutor's use of peremptory strikes to remove men from the jury pool. We conclude that the prosecutor failed to meet his burden under *Batson v. Kentucky*, 476 U.S 79 (1986), of providing a sufficient explanation of why each of his strikes was based on factors other than gender. We reverse Jagodinsky's conviction.

A harassment injunction entered on August 21, 1995, prohibited Jagodinsky from having contact with his former girlfriend, who was also the mother of his child. On February 13, 1996, Jagodinsky was arrested and charged with violating the harassment injunction.

During jury selection, the prosecutor used all four of his peremptory challenges to remove men from the jury pool. Jagodinsky's trial counsel objected, claiming that the prosecutor was engaged in purposeful gender discrimination. The trial court denied the objection and the proceedings continued. The jury subsequently found Jagodinsky guilty and he was sentenced to twelve months of probation.

The intentional use of gender when selecting jurors violates a defendant's right to an impartial jury

under the Equal Protection Clause of the Fourteenth Amendment. *See State v. Joe C.*, 186 Wis. 2d 580, 585, 522 N.W.2d 222, 224 (Ct. App. 1994); *see also J.E.B. v. Alabama*, 511 U.S. 127, 114 S. Ct. 1419, 1421 (1994).

In *Joe C.*, this court concluded that the three-step *Batson* analysis, which the Supreme Court originally developed to test for racial discrimination, also applied in the context of gender discrimination. *See Joe C.*, 186 Wis. 2d at 585, 522 N.W.2d at 224. Although either party may bring a challenge alleging the gender-influenced use of peremptory strikes, as the *Batson* test applies to Jagodinsky's claim, it required that he first make a prima facie showing that the prosecutor relied on gender when making the four peremptory selections. *See Joe C.*, 186 Wis. 2d at 585, 522 N.W.2d at 224. Second, once Jagodinsky made this showing, the burden shifted to the prosecutor, who had to provide a gender-neutral explanation for his selections. *See id.* at 585-86, 522 N.W.2d at 224. Third, the court had to evaluate both sides and reach an ultimate finding of whether Jagodinsky met his burden of proving purposeful discrimination. *See id.* at 586, 522 N.W.2d at 224.

The standard of review we apply to these three factors was addressed in *State v. Lopez*, 173 Wis. 2d 724, 496 N.W.2d 617 (Ct. App. 1992). This court held that deference is owed to the trial court's conclusions on the three *Batson* prongs and we may not reverse these findings unless they are "clearly erroneous." *See id.* at 729, 496 N.W.2d at 619.[1]

---

[1] Jagodinsky contends that the "clearly erroneous" standard should not apply to each of the three *Batson* prongs. *See Batson v. Kentucky*, 476 U.S. 79 (1986). Although the source of

We will now set out, in some detail, the proceedings that took place before the trial court. Jagodinsky's trial counsel raised his objection after the prosecutor used all of his peremptory strikes to remove men from the jury pool. The trial court conducted a hearing in chambers to further analyze this charge. Jagodinsky's counsel began by arguing that the prosecutor's decision to use all of his peremptory strikes to remove men from the panel created "at least a prima facie case."

The trial court then turned to the prosecutor and asked him to explain why "each of these individuals was stricken?" The prosecutor candidly admitted that he considered gender, but claimed that other factors motivated his decision as well, stating that his selections were:

> not based upon gender alone . . . . To say gender isn't an issue would be a lie to the Court, but there are a lot of other things, education, employment. And considerations such as those are also in the back of my mind when I pick a jury.

---

the standard we apply in this case, *State v. Lopez*, 173 Wis. 2d 724, 729, 496 N.W.2d 617, 619 (Ct. App. 1992), states that the "clearly erroneous" standard applies, he argues that this statement is dicta because the *Lopez* panel never reached the second *Batson* prong. He then crafts an argument based on *Hernandez v. New York*, 500 U.S. 352 (1991), that the second *Batson* prong involves a legal question subject to de novo appellate review. *Cf. Purkett v. Elem*, 514 U.S. 765, —, 115 S. Ct. 1769, 1775 (1995) (per curiam) (Stevens, J., dissenting) (suggesting that evaluation of the second *Batson* prong often presents a "pure legal question"). We do not need to reach this issue to resolve this case, however, because the trial court's finding concerning the second *Batson* prong fails the stricter "clearly erroneous" standard.

At this point, the trial court clarified for the record that the prosecutor (and defense counsel) had a detailed juror list that would have given him insight about those "other things," including age and employment.

The trial court then announced its ruling. It found that the "mere fact that the four strikes made by the State were all males in and of itself does not establish *a prima facie case* of discrimination . . . ." (Emphasis added.) The trial court added that it was accepting the prosecutor's explanation that he had used "other rationales" when making his strikes.

On appeal, Jagodinsky argues that the trial court misapplied the *Batson* test and should have sustained his objection.

We start with the first prong and ask whether Jagodinsky established a prima facie claim. Although the trial court expressly found that he did not, we are puzzled by this statement. First, the court's inquiry into the prosecutor's rationale for each of his four strikes suggests that it was satisfied that Jagodinsky's trial counsel had satisfied the first *Batson* prong, was moving to the second prong, and was therefore looking to the prosecutor to provide an explanation for his strikes.

Moreover, this is the only conclusion that the record supports. Although the Supreme Court has not provided extensive guidance regarding what a defendant must show to make out a prima facie claim, it has explained that the defendant must at least show that he or she is a member of a "cognizable group" and that the prosecutor has used peremptory challenges to remove persons of that same group. *See Batson*, 476 U.S. at 96.

In this instance, the uncontroverted facts are that the defendant was a man (males are a cognizable group under *J.E.B.*) and the prosecutor used every one of his challenges to remove members of this group from the jury. Even if this were not enough, the trial court heard the prosecutor admit that he used gender. Hence, the court faced plain evidence of gender discrimination. We hold that Jagodinsky met his burden of establishing a prima facie case.

Since we conclude that the trial court erred in its stated conclusion that Jagodinsky failed in his initial burden, we could end our analysis at this point and remand this matter with directions that the trial court complete the *Batson* analysis. *See Joe C.*, 186 Wis. 2d at 589, 522 N.W.2d at 225-26. However, because the trial court did ask the prosecutor to provide an explanation, we have the necessary record for the evaluation of the second *Batson* prong. We therefore turn to this phase of the analysis and ask whether the prosecutor met his burden of giving a sufficient gender-neutral explanation to support each of his choices.

Here, the State suggests that the prosecutor's admission that he used gender does not establish that he engaged in gender discrimination because he did not rely on "gender alone." We acknowledge that the Supreme Court has made a statement which seems to support this position. In *J.E.B.*, it stated: "Our conclusion that litigants may not strike potential jurors *solely on the basis of gender* does not imply the elimination of all peremptory challenges." *J.E.B*, 511 U.S. at 143, 114 S. Ct. at 1429 (emphasis added).

This statement, however, must be read in context. It followed a lengthy and detailed analysis of why the exclusion of women from jury service was bad social

policy. *See id.* at 133–45, 114 S. Ct. at 1424-29. Thus, in circumstances such as this, where the challenged party *admits* reliance on a prohibited, discriminatory characteristic, we do not see how a response that other factors were also used is sufficient rebuttal under the second *Batson* prong.

Moreover, even if our interpretation of *Batson* is incorrect, the prosecutor's explanation was flawed for another reason. Again, he only stated to the trial court that other factors, in addition to gender, had motivated his selections. We gather from the trial court's reference to the juror list that the court accepted this explanation because it found the prosecutor credible.

The Supreme Court, however, set the standard for what is required under the second *Batson* prong at a higher level. In *Batson*, the Court explained that the challenged party's race-neutral (or gender-neutral) explanation "need not rise to the level justifying exercise of a challenge for cause." *See Batson*, 476 U.S. at 97. But the Court further noted that the party must give "a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *See id.* at 98 n.20 (quoted source omitted). Subsequently, in *Purkett v. Elem*, 514 U.S. 765, ⸺, 115 S. Ct. 1769, 1771 (1995) (per curiam), the Court revisited these two standards and gave the following explanation of what they meant:

> This warning was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying a discriminatory motive or by merely affirming his good faith. What it means by a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection.

■

Hence, *Batson* and *Purkett* establish a rule that a party defending an allegation that his or her peremptory strikes were used for discriminatory reasons must offer something more than a bald, but otherwise credible, statement that other nonprohibited factors were considered. Rather, he or she must demonstrate how there is a nexus between these legitimate factors and the juror who was struck.

■

Applying this standard, we hold that the trial court reached an erroneous conclusion when it accepted this prosecutor's response as a valid explanation. As we explained above, the second *Batson* factor requires more than a credible, good faith statement that the jury selections were based on legitimate factors. But that is all that the prosecutor provided. He only stated that "other things" were used; he did not inform the trial court what factors related to each juror and how these factors made him believe that each of these jurors should not be on the jury.

Having concluded that the prosecutor failed the second *Batson* prong, what remains is Jagodinsky's unrebutted prima facie claim of purposeful gender discrimination. The only remedy is to reverse the conviction and remand for a new trial. *See State v. Walker*, 154 Wis. 2d 158, 179, 453 N.W.2d 127, 136 (1990).

*By the Court.*—Judgment reversed and cause remanded.