STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert L. KING, Defendant-Appellant.

Court of Appeals

*No. 97–1509–CR. Submitted on briefs October 2, 1997.—Decided November 26, 1997.*

(Also reported in 572 N.W.2d 530.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Glenn L. Cushing*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Sharon Ruhly,* assistant attorney general.

Before Eich, C.J., Dykman, P.J., and Vergeront, J.

VERGERONT, J. Robert King appeals his conviction of one count of second-degree sexual assault of a child, contrary to § 948.02(2), STATS. He contends that the trial court erred when it ruled that the prosecutor's peremptory strikes of older females during voir dire did not violate King's right under the Equal Protection Clause of the United States and Wisconsin Constitutions. We agree and, therefore, reverse the conviction and remand the case for a new trial.

## BACKGROUND

King was charged with having sexual intercourse with a person who had not yet attained the age of sixteen years. After voir dire of the jury, the parties made their peremptory strikes. Defense counsel challenged the prosecutor's use of two of the four peremptory strikes against the only two African-American jurors on the panel of twenty-one. Defense counsel argued that the defendant was African-American and accused of assaulting a white victim, and under these circumstances striking the only two African-Americans from the panel was impermissible. The prosecutor denied that race was a factor and offered to explain the reasons for her strikes, and the court permitted her to do so.

> PROSECUTOR: The first strike by the State was Jennie Lou Moore. I struck her because she is a retired female, and similarly that was the reason I made the third strike, that Lula Thomas who is also a retired female. She is an African American juror. My experience in trying these cases is that older females are very judgmental of sexual assault victims who is [sic] a female, and when the jury panel was picked I marked on my sheet all of the people who are retired and I specifically marked those who

298

were female and retired because my experience indicated those individuals are not favorable for the State on these type of cases, so that is why I struck juror number–well, my first strike and my third strike–was the reason for those strikes.

THE COURT: All right.

PROSECUTOR: My second strike was Larry McGlasson. I struck him because of the fact that he had a significant lie told by his child. . . .

The fourth strike was Francine Blanden. She is an African American. As I heard her name being called and wrote her on my chart before I saw her face and knew she was an African American, I immediately marked her as being someone I would potentially strike because of the fact she is a media aid, and my office has come under intense scrutiny in the media. . . . So that is the reason for my strikes.

Defense counsel immediately objected on the ground that the prosecutor "basically indicates that she struck retired females. Gender is no more permissible a reason than race." The court ruled that the strikes were permissible:

> That's not for gender; that's for attitude that she attributes to these people. I'm not going to get down the road of interfering with peremptory strikes absent a clear discriminatory intent. I accept Ms. Jones' explanation. I believe that people selecting jurors have to have some basis for following their instincts as to who will be a favorable juror to them, but I don't believe that race and gender are permissible matters to be considered. I think that Ms. Jones' explanations do not show any type of discriminatory attempt and I don't believe they're protectural [sic] either. I did note when Ms. Blanden was selected to come up here that Ms.

Jones did make that note on her pad, and the Court saw that before she even saw who the juror was. And so I don't believe that test [sic] explanations were protectural. Additionally, I don't think that the explanation needs to rise to the level we have been exercising for challenge of cause. In short, I don't believe *Batson* requires that an attorney leave their [sic] instincts at home about who is a fair juror to them and to their position. . . .

## DISCUSSION

■ Purposeful racial and gender discrimination in selection of the venire violates a litigant's right to equal protection because it denies the protection that a trial by jury is intended to secure. *Batson v. Kentucky,* 476 U.S. 79, 86 (1986). *See J.E.B. v. Alabama,* 511 U.S. 127 (1994). In *J.E.B.* the court held that the Equal Protection Clause forbids intentional discrimination on the basis of gender just as it prohibits discrimination on the basis of race. *Id.* at 144–45. Discrimination based on gender in jury selection includes selection based on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man. *Id.*

■ This court has concluded that the three-step *Batson* analysis, which the Supreme Court originally developed to test for racial discrimination, also applies in gender discrimination. *State v. Jagodinsky,* 209 Wis. 2d 577, 580, 563 N.W.2d 188, 189 (Ct. App.1997) (citing *State v. Joe C.,* 186 Wis. 2d 580, 585, 522 N.W.2d 222, 224 (Ct. App. 1994)). As with race-based *Batson* claims, a party alleging gender discrimination must first make

300

a prima facie showing that the prohibited factor was relied on in exercising the peremptory strike. *Id.* Second, once this showing is made, the burden shifts to the party exercising the strike to provide a race-neutral or gender-neutral explanation for the selections. *Id.* Third, the court must evaluate both sides and reach an ultimate finding of whether the party alleging discrimination met the burden of proving purposeful discrimination. *Id.* This court has also held that deference is owed to the trial court's conclusions on the *Batson* three-prong test and we will not reverse these findings unless they are clearly erroneous. *See id.* at 580 (citing *State v. Lopez*, 173 Wis. 2d 724, 729, 496 N.W.2d 617, 619 (Ct. App. 1992)).[1]

On appeal, King argues that the prosecutor violated his equal protection rights when she purposefully

---

[1] King argues that the deferential standard is incorrect with respect to the second *Batson* step, that our ruling on this point in *State v. Lopez*, 173 Wis. 2d 724, 729, 496 N.W.2d 617, 619 (Ct. App. 1992), was dicta, and that we should use a de novo standard on the second step. The reason we decided in *Lopez* to employ the "clearly erroneous" standard at each step in the *Batson* analysis is that the question of discriminatory intent is largely informed by the trial judge's perceptions at voir dire. *Lopez*, 173 Wis. 2d at 729, 496 N.W.2d at 619. We acknowledge that the issue presented on this appeal, as we define it later in this opinion, does not depend for its resolution on competing inferences from the evidence or the trial court perceptions and may be described as purely a question of law. However, we will not modify our decision in *Lopez* because we are bound by our published decisions and may not overrule, modify or withdraw language from them. *Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246, 256 (1997). In addition, we observe that the standard of review would not affect the outcome in this case because the trial court's determination fails the stricter clearly erroneous standard.

struck older females[2] from the jury because gender is a prohibited basis on which to strike a juror. The State presents two arguments in response. First, because the trial court never ruled that King made a prima facie showing of purposeful racial discrimination, this court's analysis should go no further and we should disregard the prosecutor's explanation, which included the statement about gender. Second, if we do consider the gender claim, we should conclude there was no impermissible discrimination because when the prosecutor struck Moore and Thomas she considered age in addition to gender, and age, a permissible factor, was the decisive factor.

We disagree that we should confine our analysis to the initial challenge based on race. After defense counsel raised the *Batson* challenge based on race, and explained her position, the court gave the prosecutor the opportunity to respond. The prosecutor did not argue that King had not established a prima facie case but, without prompting or a specific inquiry from the trial court, she immediately offered to explain the nondiscriminatory reasons for the strikes, and the court permitted her to do so.[3]

---

[2] The prosecutor used both "older" and "retired." Both parties interpret the prosecutor's reference to "retired" as signifying "older" rather than unemployed status. We agree with this interpretation and use "older" instead of "retired."

[3] After the defense counsel raised and explained the race-based *Batson* challenge, the trial court simply stated: "Miss Jones [prosecutor]." The prosecutor immediately responded:

> Judge, I can assure the Court I did not strike those individuals because of their race. I struck them for other reasons. I don't know if it's the appropriate time to go into the testimony as to my reason for striking them. I can make a brief record if the Court wishes.

When the prosecutor offers a race-neutral explanation for peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant made a prima facie showing becomes moot. *See Hernandez v. New York*, 500 U.S. 352, 359 (1991). Since the prosecutor here did not argue to the trial court that King had not established a prima facie case for a race-based challenge, but offered immediately to provide race-neutral reasons, there was no need for the trial court to rule on whether a prima facie case had been met. The trial court's failure to do so was not improper, and does not prevent us, the reviewing court, from moving to the second step of the *Batson* analysis. *See id.*

In this case, the reasons offered by the prosecutor to rebut the claim of racial discrimination included an affirmative and unequivocal statement that she struck two of the four jurors because they were older females. The State argues that we should disregard this statement because there was no prima facie showing of discrimination based on gender. However, if we move to the second step of the *Batson* analysis when the prosecutor provides a race-neutral explanation rather than first challenging the prima facie showing, *see Hernandez*, 500 U.S. at 359, we see no logical reason, and no requirement in the case law, for returning to the first step of the *Batson* analysis for the gender challenge under these circumstances—when the prosecutor, unprompted, has stated that gender was a

---

The court stated that it would like a brief record, and the prosecutor presented her reasons for the four strikes, as we have already quoted, *supra*.

factor in two of the strikes and the defense objects to those two strikes as discrimination based on gender. Moreover, were we to start with an analysis of the prima facie showing for the gender claim, we would not disregard the prosecutor's statement about her reasons for striking jurors Moore and Thomas. Taking that into account, we would conclude that the defendant established a prima facie case of gender discrimination. The prosecutor's statement prompted the gender discrimination claim and her statement would be properly considered as part of the prima facie showing. In *Jagodinsky*, in a similar situation, we considered the prosecutor's acknowledgment of taking gender into account as "plain evidence" of gender discrimination in analyzing the prima facie showing. *Jagodinsky*, 209 Wis. 2d at 583, 563 N.W.2d at 191.

In *Jagodinsky*, the defendant was charged with violating an injunction that prohibited him from having any contact with his former girlfriend. *Jagodinsky*, 209 Wis. 2d at 579, 563 N.W.2d at 189. During voir dire, the prosecutor used all four of his peremptory strikes to remove men from the venire. *Id.* Jagodinsky objected, claiming that the prosecutor's peremptory strikes were based on gender and asserting that he had established a prima facie case. *Id.* at 581, 563 N.W.2d at 190. The court asked the prosecutor to explain why each individual was stricken. *Id.* The prosecutor acknowledged that he considered gender, but claimed that his selections were "not based upon gender alone," that other factors motivated his decision, such as education and employment. *Id.* The trial court found that the mere fact that the prosecution used its four strikes to strike all males did not establish a prima facie case of discrimination and that it was accepting the prosecutor's explanations that he had used "other

rationales" when making his four strikes. *Id.* at 582, 563 N.W.2d at 190.

On appeal, we determined that *Jagodinsky* had established a prima facie case because the defendant was male, a member of a cognizable group under *J.E.B.*, and the prosecutor used every peremptory challenge to remove members of this group. "Even if this were not enough," we stated, "the trial court heard the prosecutor admit that he used gender. Hence the court faced plain evidence of gender discrimination." *Jagodinsky*, 209 Wis. 2d at 583, 563 N.W.2d at 191. Instead of remanding the matter for the trial court to complete the *Batson* analysis, we analyzed the second *Batson* prong, because the prosecutor had provided an explanation and we therefore had the necessary record. *Id.*

As in *Jagodinsky*, the prosecutor's statement here is plain evidence of gender discrimination. Therefore, whether we start with the first step, as we did in *Jagodinsky*, or go immediately to the second step, as is permissible under *Hernandez*, we arrive at the second step in the analysis on the gender claim. We turn to that now.

We observe at the outset that the prosecutor's unprompted statements on gender frames the second step of the *Batson* analysis on the gender claim in a very particular way. The trial court was not confronted with the typical second step question of whether the prosecutor's explanation was gender neutral, because the prosecutor had clearly stated that gender was one of two factors (the other being age) for striking jurors Moore and Thomas.[4] Nor did the trial court have to

---

[4] The trial court's reason for deciding there was no purposeful discrimination based on gender is not entirely clear. Its comments could be interpreted as deciding that gender was not

decide whether age was a pretext, because defense counsel did not claim that it was. Rather, King's contention below, and on appeal, is that it is impermissible to base a peremptory strike on gender even if there is an additional legitimate reason for striking that person.

The State acknowledges that gender was a factor and that gender is not a valid reason for striking a juror. However, it argues that age is a valid reason[5] and, since there were two reasons, we should adopt the "dual motivation test" to determine whether to allow these strikes. Under the dual motivation analysis, the party who exercised the strike must prove that the strike would have been exercised regardless of the discriminatory motivation. *See Wallace v. Morrison*, 87 F.3d 1271, 1275 (11th Cir. 1996). Under this analysis, a prohibited factor, such as gender, does not automati-

---

a factor in the prosecutor's two strikes, or that attributing characteristics to a juror because of her gender is not the same as a purposeful strike based on gender. However, the State does not take either of these two positions. We interpret the trial court's ruling to be that there was no purposeful discrimination based on gender in the strikes of Moore and Thomas because age was also a factor. This is the State's interpretation, although the State also asserts that the trial court implicitly found that age was the decisive of the two factors. We have difficulty deriving that from the trial court's decision, but whether the trial court did or did not make an implicit finding on the decisive factor does not affect our decision.

[5] The State cites a number of federal decisions holding that removing a juror because of age is not a violation of the equal protection clause. *United States v. Clemens*, 941 F.2d 321, 325 (5th Cir. 1991). *See also United States v. Pichay*, 986 F.2d 1259, 1260 (9th Cir. 1993); *United States v. Cresta*, 825 F.2d 538, 545 (1st Cir. 1987). We assume without deciding that age is a permissible reason.

cally result in an equal protection violation. If there are other permissible motivating factors, the prohibited factor must be the decisive part of the motive. *See Howard v. Senkowski*, 986 F.2d 24, 27 (2nd Cir. 1993). Although some federal circuits have adopted the dual motivation analysis,[6] the Supreme Court has not ruled on this issue.

We agree with King that in *Jagodinsky* this court rejected essentially the same argument, although it was not denominated "dual motivation." When we analyzed the second *Batson* step in *Jagodinsky*, we first addressed the State's argument that the prosecutor's admission that he used gender did not establish that he engaged in gender discrimination because he did not rely on "gender alone." *Jagodinsky,* 209 Wis. 2d at 583, 563 N.W.2d at 191. We acknowledged this language from *J.E.B.*, which the State in this case also points to: " 'Our conclusion that litigants may not strike potential jurors *solely on the basis of gender* does not employ the elimination of all peremptory challenges, *id.* (quoting *J.E.B.*, 511 U.S. at 143) (emphasis added).' " However, we concluded that this statement, read in context, did not support the State's argument. We stated: "In circumstances such as this, where the challenged party admits reliance on a prohibited discriminatory characteristic, we do not see how a response that other factors were also used is sufficient rebuttal under the second prong of *Batson*." *Id.* at 583–84, 563 N.W.2d at 191.

The State argues that adopting the dual motivation test does not conflict with *Jagodinsky* because we

---

[6] *See e.g., United States v. Tokars, 95 F.3d 1520, 1533 (11th Cir. 1996), cert. denied, 117 S. Ct. 1328 (1997); James v. Plaster, 57 F.3d 417, 421 (4th Cir. 1995); and United States v. Darden, 70 F.3d 1507, 1531 (8th Cir. 1995).*

did not need to reach the dual motivation analysis in *Jagodinsky*. The State contends that in *Jagodinsky,* "the prosecutor never offered dual motives, but merely denied gender-based motives." We do not agree with this characterization of either the prosecution's remark in *Jagodinsky* or our decision. The prosecutor did not merely deny gender-based motives but denied that gender was the sole basis for selection because there were other factors, such as education and employment.[7] We interpreted this as an acknowledgment that gender was a factor, although not the only one. The prosecutor in this case, as in *Jagodinsky*, clearly stated that gender was a factor, but that there was another—age. Although the term "dual motivation" was not used in *Jagodinsky*, we did there interpret *Batson* and *J.E.B.* to preclude striking a juror based on a prohibited characteristic, even if other non-prohibited characteristics were also used. This court is bound by its previously published decisions. We may not overrule, modify or withdraw language from those opinions. *Cook v. Cook,* 208 Wis. 2d 166, 190, 560 N.W.2d 246, 256 (1997).

It is true, as the State points out, that the prosecutor in this case explained the non-gender reason for striking jurors Moore and Thomas in more detail than did the prosecutor in *Jagodinsky*. And we did, in *Jagodinsky*, discuss the lack of specificity as an alter-

---

[7] These were the prosecutor's comments in *Jagodinsky*:

'[My selections were] not based upon gender alone. . . . To say gender isn't an issue would be a lie to the Court, but there are a lot of other things, education, employment. And considerations such as those are also in the back of my mind when I pick a jury.'

*State v. Jagodinsky*, 209 Wis. 2d 577, 581, 563 N.W.2d 188, 190 (Ct. App. 1997).

native reason for concluding that the prosecutor failed the second *Batson* prong. *Id.* at 584–85, 563 N.W.2d at 191–92. However, this alternative basis for our ruling does not permit us to ignore our express rejection of the "not solely based on gender" justification. When a court intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not dictum but a judicial act of the court that is thereafter binding. *See State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85, 88 (1981).

We hold that the trial court erred when it concluded that the prosecutor had not purposefully engaged in gender discrimination in striking jurors Moore and Thomas. Based on the prosecutor's statement that she struck these two jurors because they were older females and "older females are very judgmental of sexual assault victims who is [sic] a female," the only correct conclusion on this record is that the prosecutor purposefully used gender as a basis for striking these two jurors. The prosecutor stated that she marked all the retired people, she specifically marked the retired females, and that is why she struck Moore and Thomas. Following our holding in *Jagodinsky*, we conclude this constitutes a violation of the equal protection clause. The only remedy is to reverse the conviction and remand for a new trial. *See Jagodinsky*, 209 Wis. 2d at 585, 563 N.W.2d at 192 (quoting *State v. Walker*, 154 Wis. 2d 158, 179, 453 N.W.2d 127, 136 (1990)).

*By the Court.*—Judgment reversed and cause remanded.