STATE of Wisconsin, Plaintiff-Respondent,

v.

Calvin GREGORY, Defendant-Appellant.†

Court of Appeals

*No. 00–0961–CR. Submitted on briefs December 7, 2000.—Decided April 5, 2001.*

## 2001 WI App 107

(Also reported in 630 N.W.2d 711.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Meredith J. Ross, Clinical Associate Professor,* of the *University of Wisconsin Law School* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Chris R. Larsen*, assistant attorney general.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. ROGGENSACK, J. Because the circuit court's finding that Calvin Gregory failed to prove the prosecutor's use of a peremptory strike to remove a juror was an act of purposeful racial discrimination is not clearly erroneous, we affirm the judgment.

## BACKGROUND

¶ 2. Gregory was charged with possession of heroin with intent to deliver, within 1,000 feet of a school, as a repeater; the operation of a drug house, as a repeater; possession of cocaine, as a repeater; and felony bail jumping, as a repeater. After the jury was selected, but before its members were sworn, Gregory, who is African-American, challenged the prosecutor's use of a peremptory strike to remove the sole African-American juror, Dondre Eugene Bell. The circuit court immediately held a hearing on Gregory's challenge. Counsel for Gregory accused the prosecutor of using a peremptory challenge to remove all African-Americans from the jury, and the State gave its reasons for the strike. Thereafter, the circuit court found that Gregory had not proved the State's removal of Bell was racially motivated.[1] The jury was recalled and sworn.

---

[1] The circuit court denied Gregory's challenge by simply saying, "So I will deny your motion." Because the circuit court was required to find the prosecutor had discriminatory intent in order to grant the motion, *Hernandez v. New York*, 500 U.S. 352, 369 (1991), we conclude that its denial of the motion demon-

¶ 3. After a guilty verdict was returned to counts one and two and a not guilty verdict to count three, Gregory pled to bail jumping. Subsequent to sentencing, Gregory filed a notice of intent to pursue postconviction relief. One of his challenges, and the issue central to this appeal, is whether the circuit court erred in failing to grant his *Batson*[2] challenge to the prosecutor's peremptory strike of the sole African-American juror. Gregory asked the court to schedule a postconviction evidentiary hearing so that he could cross-examine the prosecuting attorney and an assistant district attorney who also had used a peremptory strike to remove Bell in an earlier criminal case. The State argued that a *Batson* challenge must be decided solely upon the record developed in *voir dire* and on the responses given at the hearing held before the jury was sworn.

¶ 4. On hearing Gregory's postconviction motions, the circuit court agreed with the State and declined to hold a postconviction evidentiary hearing. Instead, it reviewed the record made during *voir dire* and the State's responses at the *Batson* hearing. It also allowed the parties to file written proffers of evidence showing what they would have sought to prove if an evidentiary hearing had been held.[3] The circuit court reaffirmed its finding that Gregory had not made a successful *Batson* challenge, and this appeal followed.

strated that it did not find the requisite discriminatory intent. Additionally, the court clarified in the hearing on Gregory's postconviction motions that it had found the prosecutor's explanation at the initial hearing race-neutral.

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[3] The proffers are part of the record on appeal, and we have reviewed them.

## DISCUSSION

**Standard of Review.**

¶ 5. We review the circuit court's finding of whether the prosecutor had the discriminatory intent necessary to support a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), as a finding of historic fact, which we will not overturn unless it is clearly erroneous. *Hernandez v. New York*, 500 U.S. 352, 369 (1991).

### *Batson* **Challenge.**

¶ 6. It is a violation of a defendant's right to equal protection of the law for the State to use a peremptory challenge to remove a potential juror from the venire solely because of race. *Batson*, 476 U.S. at 84. A defendant's challenge to the State's use of peremptory strikes to deliberately remove jurors from the venire because of race was initially addressed by the United States Supreme Court in *Swain v. Alabama*, 380 U.S. 202 (1965), where the Court held that systematic exclusion violated African-American defendants' rights to equal protection of the law.[4] *Id.* at 223. *Batson* expanded the holding of *Swain* because it concluded that an individual defendant is denied equal protection of the law when the State uses peremptory challenges to purposefully exclude potential jurors from the petit jury for that defendant solely because they are members of the same race as the defendant. *Batson*, 476 U.S. at 84.

[4] Much earlier, the Supreme Court had held that the State denies African-American defendants equal protection of the law when African-Americans are purposefully excluded from jury service. *Strauder v. West Virginia*, 100 U.S. 303, 306–07 (1880).

¶ 7. *Batson* established that in order to make a successful challenge to the composition of a petit jury, a defendant must prove "purposeful discrimination." *Id.* at 93. In so doing, a defendant may rely on direct and circumstantial evidence of invidious intent, including proof of disproportionate impact. *Id.* In meeting this burden, a defendant first must make a *prima facie* showing that the State acted with discriminatory intent. To do so, a defendant should establish that he is a member "of a cognizable racial group" and that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire. *Id.* at 96. In making his case, a defendant is entitled to rely on the fact that peremptory challenges can be used as a jury selection practice to discriminate based on race, by those who intend to do so. *Id.* Some courts have created a bright-line rule whereby a defendant can make a *prima facie* case simply by showing that the prosecutor has used peremptory strikes to remove all members of the defendant's race from the jury, even if only one strike is required.[5] Wisconsin has declined to adopt such a bright-line rule. *State v. Walker*, 154 Wis. 2d 158, 174 n.7, 453 N.W.2d 127, 133 n.7 (1990). "Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson*, 476 U.S. at 96. This combination of factors raises the necessary inference of "purposeful discrimination." *Id.*

¶ 8. Once a defendant has made a *prima facie* case, then the burden shifts to the State to refute the

---

[5] *United States v. Chalan*, 812 F.2d 1302 (10th Cir. 1987); *Stanley v. State*, 542 A.2d 1267 (Md. 1988); *Pearson v. State*, 514 So. 2d 374 (Fla. Dist. Ct. App. 1987).

70

inference of discriminatory intent. *Id.* at 97. The State's rebuttal does not need to be sufficient to justify a challenge for cause. *Id.* However, a prosecutor may not rebut a defendant's *prima facie* case simply by stating that he thought that because the juror and the defendant were of the same race, the juror would be sympathetic to the defendant's position. *Id.* Furthermore, a prosecutor may not rebut a defendant's *prima facie* case simply by denying that he had a discriminatory motive, but rather, the prosecutor "must articulate a neutral explanation related to the particular case to be tried." *Id.* at 98. If the State does so, then the circuit court has the duty to weigh the credibility of the testimony and determine whether purposeful discrimination has been established. *Id.* As part of this third step, a defendant may show that the reasons proffered by the State are pretexts for racial discrimination. *Walker,* 154 Wis. 2d at 176 n.11, 453 N.W.2d at 134 n.11.

¶ 9. At the hearing outside of the presence of the jury, and without ruling whether Gregory had made a *prima facie* case under *Batson* of purposeful discrimination, the court asked the prosecutor to explain why he struck Bell.[6] The prosecutor said that he had several reasons: First, he had asked whether any juror had "police come to their residence for any type of complaint or to make an arrest or what have you." Bell responded, "They came to our office before to check out they had a burglary." He mentioned nothing about any police contacts at his residence. However, the prosecutor had received information from another assistant district attorney that police had responded to 1216

---

[6] Contrary to the assumption of the dissent, we do not assume that the circuit court had found Gregory had made a *prima facie* case.

Wisconsin Avenue, Bell's residence, seventeen times between January 1996 and October 1998. Therefore, he said he believed that Bell was not being truthful in the answers he gave to the questions posed. Second, the prosecutor had also been told that one of those contacts involved a complaint of cocaine dealing, which information he found consistent with his recollection that Bell had said he had an uncle who had been "arrested for cocaine, some type of cocaine offense."[7] Third, he was aware that a man named Christopher Bell had been arrested by federal agents in one of the largest cocaine dealing rings in Rock County, and he was concerned that Christopher Bell was the uncle that Bell had referred to during *voir dire*. And fourth, Bell lived close to the address where it was alleged that Gregory operated a drug house and therefore might be familiar with those who frequented it. Based on those concerns, the prosecutor concluded that the State's interests would be best served by striking Bell.

¶ 10. After hearing this explanation, counsel for Gregory said he could not refute the prosecutor's statements, as some of his reasons were not part of the record. However, he did not seek a brief adjournment to verify any of the prosecutor's factual assertions. Accordingly, without determining whether a *prima facie* case had been made in the first instance, the court found that based on the record before it, Gregory's *Batson* challenge must be denied because Gregory had not

---

[7] Actually, Bell said he had an uncle who had *used* cocaine. Gregory makes much of this error in his brief, but he did not raise it during the *Batson* hearing before the jury was sworn. Therefore, we conclude it is not significant for this appeal. *See State v. Waites*, 158 Wis. 2d 376, 380, 462 N.W.2d 206, 207 (1990).

proved purposeful discrimination. *Walker*, 154 Wis. 2d at 156, 453 N.W.2d at 134.

¶ 11. In motions after verdict, Gregory resumed his *Batson* challenge and requested an evidentiary hearing, for which he made sizeable proffers of evidence which he argued showed: that Bell was unaware of all the police contacts at his residence; that Bell was unrelated to Christopher Bell; and that Bell had answered the questions during *voir dire* truthfully. The circuit court determined that an evidentiary hearing was unnecessary and that the *Batson* challenge had to be decided based on what the prosecutor believed when he struck Bell. We agree with the circuit court.

■

¶ 12. *Batson* requires that jurors not be struck because they are African-Americans. *Batson*, 476 U.S. at 84. It does not require that African-American defendants have African-American jurors. *See Walker*, 154 Wis. 2d at 174 n.7, 453 N.W.2d at 133 n.7. Here, the prosecutor listed numerous racially neutral reasons specifically related to Gregory's trial: (1) his concern about Bell's truthfulness in answering questions during *voir dire*, (2) family members who had some relationship to cocaine, a drug Gregory was accused of possessing, (3) close proximity to the alleged drug house,[8] and (4) a concern that the uncle to whom Bell referred could have been recently arrested for significant involvement with drug trafficking. While it is true that the prosecutor did not verify much of the

---

[8] Contrary to Gregory's argument on appeal, the prosecutor did not say that he struck Bell because of the neighborhood in which he resided. Therefore, the concern addressed in *United States v. Briscoe*, 896 F.2d 1476, 1488 (7th Cir. 1990), that striking a juror based on his neighborhood could be a pretext for striking the juror based on his race, is not present here.

information on which he relied, there was no showing made by Gregory, either at the *Batson* hearing or at motions after verdict, that tends to prove those reasons were a pretext for racial discrimination.

¶ 13. Courts have routinely held that striking a juror because he or she lived in close proximity to some witness or evidence in the case to be tried is a race-neutral reason. *United States v. Briscoe*, 896 F.2d 1476, 1488–89 (7th Cir. 1990) (removal of an African-American venireperson who lived near two witnesses was race-neutral); *United States v. Williams*, 936 F.2d 1243, 1247 (11th Cir. 1991) (collecting cases upholding peremptory challenges based on geographical relationship between facts of the case to be tried and the venireperson). Courts also have upheld peremptory strikes based on a familial relationship to individuals involved in the criminal justice system. *United States v. Johnson*, 941 F.2d 1102, 1109 (10th Cir. 1991) (upholding strike of an African-American juror because family member was convicted of a crime and family history suggested disregard for the law); *United States v. Bennett*, 928 F.2d 1548, 1551 (11th Cir. 1991) (strike upheld due to prior family involvement with drug-related offenses). Accordingly, we conclude that the circuit court's finding that Gregory had failed to show that the prosecutor excluded Bell from the jury because both he and Gregory are African-Americans is not clearly erroneous.

■

¶ 14. Additionally, we also conclude that a postconviction evidentiary hearing was properly denied because a circuit court's decision on a *Batson* challenge must be made before the jury is sworn. Furthermore, none of the proffers provided proof that was relevant to the prosecutor's intent when he struck Bell. For exam-

ple, none of the documents showed the prosecutor had not been told what he represented to the court in the *Batson* hearing or that he knew any of the information he said he relied on was inaccurate. Instead, most of the materials focused on whether the information he was given was accurate. However, when attempting to prove the reasons given by the prosecutor were pretextual, the focus must be on what the prosecutor knew about the potential juror when he made the strike. *Williams v. Chrans*, 957 F.2d 487, 491 (7th Cir. 1992). Therefore, if a defendant is attempting to prove the prosecutor's reasons for the strike were pretextual, a defendant must show either that the prosecutor intentionally misrepresented the facts he said he relied on or that he had been told those facts but he knew they were erroneous. Stated another way, even if we were to assume, *arguendo*, that the prosecutor relied on inaccurate information, it does not necessarily follow that the prosecutor had the intent required to sustain a finding of purposeful discrimination. Here, what Gregory sought to prove by his proffers at the postconviction hearing was not relevant to the prosecutor's intent when he struck Bell. *See State v. Toliver*, 187 Wis. 2d 346, 358, 523 N.W.2d 113, 117 (Ct. App. 1994). And finally, if counsel for the defense required additional information in order to challenge the prosecutor's statements in the *Batson* hearing, he should have requested a brief adjournment at that time, fully explaining what he needed and why he needed it in order to complete the *Batson* hearing. No adjournment was requested here. Therefore, for all the reasons set forth above, we affirm the judgment of the circuit court.

## CONCLUSION

¶ 15. Because the circuit court's finding that Gregory failed to prove the prosecutor's use of a peremptory strike to remove a juror was an act of purposeful racial discrimination is not clearly erroneous, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.

¶ 16. VERGERONT, J. *(dissenting).* I conclude that the trial court erred in its application of the *Batson* analysis. I do not agree with the majority that defense counsel waived the right to object to the prosecutor's proffered reasons for using a peremptory strike to remove Dondre Bell by not requesting an adjournment, nor do I agree that an evidentiary hearing is not required. Therefore, I would remand for an evidentiary hearing.

¶ 17. During voir dire, the prosecutor asked the potential jurors whether any had used a controlled substance such as marijuana, cocaine, or heroin. Seven answered they had used marijuana, ranging from twenty years ago to two years ago, and all seven said there was nothing about that fact that would make them unable to be a fair juror. The prosecutor then asked whether the family members of any potential jurors had used a controlled substance. Bell answered that his uncle had used cocaine approximately seven years ago; another potential juror answered that his brother used cocaine fourteen or fifteen years ago; and four answered that relatives had used marijuana between ten and twenty years ago. Five of these six persons, including Bell, said there was nothing about this that would make them unable to be a fair juror;

one said she did not know if she could be fair and was excused for cause.

¶ 18. After asking whether any potential juror had been arrested for any reason (one had, not Bell), the prosecutor asked whether a close family member had been arrested for any type of criminal offense. Four potential jurors, not including Bell, answered in the affirmative. When the prosecutor asked whether the police had come to the residence of any other potential juror for "any type of complaint or to make an arrest or what have you?" Bell answered: "They came to our office before to check out they had a burglary,"[1] and he said he was satisfied with the way the police handled the complaint. Seven other potential jurors related visits to their homes by police officers for various reasons—noise complaints, a domestic dispute, vandalism to a juror's home, and burglary or theft of a juror's residence or possessions. Six of these seven potential jurors were satisfied with the police response; one was not but apparently indicated no to the question of whether anything about that incident would lead her to be unable to be fair.

¶ 19. Defense counsel began by asking the potential jurors if any lived near 1604 Wisconsin in Beloit. Bell answered yes and gave his address as "1200."[2] In response to a follow-up question, Bell said that nothing

---

[1] Since the prosecutor asked "has anyone ever had the police come to their residence for any type of complaint or to make an arrest or what have you?" we are uncertain whether Bell answered "office" or whether this is an error in transcription.

[2] The transcript of the voir dire states "1200," but it appears from other documents on the record that Dondre Bell lived at 1216 Wisconsin Avenue on the date of the voir dire, April 16, 1999.

about that fact would impact on his ability to be fair and impartial. Another potential juror explained that his family owned the property at 1604 Wisconsin Avenue, but sold it in 1993, and he had not been there since 1992, and that would not make it difficult for him to be fair and impartial.

¶ 20. After defense counsel completed his questions and the attorneys made their peremptory strikes, defense counsel made a motion that was heard in chambers. This is the record of that hearing:

[DEFENSE COUNSEL]: Your Honor, I believe that my client is entitled to a jury of his peers. There was one black person in the jury panel. [The prosecutor] struck that person. Under *Batson*, [the prosecutor] has to have a nondiscriminatory reason for having struck him, and I would request that he show cause as to why he did so.

THE COURT: Well, as I recall the juror's answers he said that the police had been to the premises on one occasion and he felt he was treated fairly and then he also responded that he lives on Wisconsin Avenue at an address not far from the premises that are the premises described in the information in this case. What's your reason for striking him, Mr. District Attorney?

[THE PROSECUTOR]: Your Honor, the court presided over the trial yesterday involving State versus Nancy Lamon where the State also struck Mr. Bell and Miss Dabson Bollendorf provided various reasons why Mr. Bell was struck by the State. And I would just reiterate those reasons as she relayed them to me prior to the jury selection. First of all, a record check of 1604 Wisconsin indicated that there had been numerous—strike that. A record check of Mr. Bell's residence indicated that there had been

numerous police contacts at that residence. Clearly I believe Mr. Bell was not being truthful when he indicated that there was only one police contact at the residence and that was for a complaint of burglary. Miss Dabson Bollendorf also informed me that among the police contacts at Mr. Bell's residence included a complaint of cocaine dealing. And that is consistent with Mr. Bell's statement that his uncle had been arrested for cocaine, some type of cocaine offense. And given the fact that Mr. Bell's—given Mr. Bell's last name I have very strong reason to believe that the uncle that Mr. Bell referred to was Christopher Bell which was—who was arrested by the federal government in one of the largest cocaine dealing rings in Rock County. Given that, the fact that he does live close to the defendant's residence and as I indicated my belief that he was not being truthful in response to my questions regarding police contacts at the residence and prior arrests and convictions of family relatives, I believe I had more than an ample non-racial basis to strike Mr. Bell.

THE COURT: [Defense counsel]?

[DEFENSE COUNSEL]: Your Honor, I can't refute what [the prosecutor] is saying. A lot of what he's saying is beyond the record. I wasn't here yesterday. I have no idea what happened during the trial. I guess—

THE COURT: Well, that's the problem I have, [the prosecutor]. I have to do it on the record you make.

[THE PROSECUTOR]: And I am making the record based upon the information that Miss Dabson Bollendorf informed me and as an officer of the court I believe I certainly can rely on her statements to me as to why she struck Mr. Bell and rely on that

information as being reliable in making my determination as to whether or not to strike a juror.

THE COURT: And he did testify today that there had been an arrest made for cocaine violation at the premises when he was there, did he not?

[THE PROSECUTOR]: I believe that he testified that his uncle had been arrested for cocaine.

[DEFENSE COUNSEL]: I had not personally—

THE COURT: Not he but this had been an arrest made at the premises of his uncle. Well, I think that satisfies the law as it now exists, [defense counsel]. So I will deny your motion. You have exception. And I can give you no more.

[DEFENSE COUNSEL]: Thank you.

THE COURT: Okay.

¶ 21. Although the trial court did not rule that Gregory had made a prima facie showing that the State acted with discriminatory intent, it appears the court concluded Gregory had done so because it proceeded to the second step and asked the prosecutor to explain his peremptory strike. The State does not argue on appeal that we may affirm on the alternative ground that Gregory did not make a prima facie showing, and I take this to be a recognition that the record of the voir dire supports such a showing. Moreover, I conclude that the relevant circumstances as revealed on the record of the voir dire do raise an inference of discrimination, thus satisfying the test for a prima facie showing. *State v. Walker*, 154 Wis. 2d 158, 172–73, 453 N.W.2d 127 (1990). Although, as the majority points out, the striking of the only African-American juror does not automatically constitute a prima facie showing, *id.* at 174 n.7, that fact, together with the fact that none of

Bell's answers made him a suitable candidate for exclusion or differentiated him in obvious ways from white jurors who were not struck does constitute a prima facie showing.

¶ 22. Considering next the trial court's ruling on the second step—whether the State met its burden to come forward with a race-neutral reason for the strike—it is evident that the trial court determined the prosecutor had met this burden. The difficulty here, however, is that what the trial court apparently considered as the race-neutral reason—that there had been an arrest of Bell's uncle for cocaine at his uncle's premises—was not what the prosecutor stated as his reasons and also was an incorrect statement of Bell's answer on voir dire. The prosecutor's stated reasons were based in large part on information he had from sources other than the voir dire, which led him to believe Bell was not being truthful and that his family members were more involved in cocaine than Bell had revealed. It appears the trial court may have thought it could not consider reasons that were not part of the record and therefore focused on what the court recalled as one of Bell's answers on voir dire—that "there had been an arrest for cocaine at the premises when he was there." However, this was not a correct statement of Bell's response on voir dire, and the prosecutor's correction of this statement also was not correct—the prosecutor's question to which Bell answered, "Uncle. Cocaine," was whether any family members had *used* a controlled substance. Bell did not respond, as did other potential jurors, when asked if close family members had been arrested, and he said nothing about the premises of his uncle.

¶ 23. We defer to the trial court's determination at each of the three *Batson* steps, reversing only if the

determination is clearly erroneous. *State v. King*, 215 Wis. 2d 295, 301, 572 N.W.2d 530 (Ct. App. 1997). Both because the trial court did not rule on the reasons the prosecutor gave and because it attributed to Bell a statement he did not make in voir dire, I cannot affirm the trial court's ruling at the second step.

¶ 24. Turning to the third step, it appears the trial court did not distinguish between the second and third steps of the *Batson* analysis. Rather, it appears that, having determined the State had met its burden on the second step, the court immediately denied the motion, implicitly deciding Gregory had not met his burden of establishing purposeful discrimination—for example, by showing that the prosecutor's explanation was a pretext. *See Walker*, 154 Wis. 2d at 176 n.11. However, the third step in the *Batson* analysis is not satisfied by a conclusory statement that the prosecutor's explanation is race-neutral. *Jordan v. Lefevre*, 206 F.3d 196, 200 (2nd Cir. 2000). At the third step, the trial court has the duty to determine if the defendant has established purposeful discrimination. *Batson v. Kentucky*, 476 U.S. 79, 98 (1986). The duty of assessing the credibility of the prosecutor's race-neutral reasons embodies the "decisive question" in the *Batson* analysis, *Hernandez v. New York*, 500 U.S. 352, 365 (1991), and requires the trial court to consider all the facts and circumstances. *Jordan*, 206 F.3d at 200.

¶ 25. In this case the prosecutor's explanation for the challenged strike was based on information about Bell beyond that produced in voir dire. I conclude the prosecutor may rely on information that is not produced in voir dire, and, when that occurs, the trial court should decide at the second step whether that explanation is race-neutral. If the trial court decides that it is, I conclude that at the third step the defendant is entitled

to challenge that explanation as a pretext, and must have the opportunity to explore the information that the prosecutor has provided as the basis for the strike. The rationale for applying the deferential standard to trial court rulings on *Batson* challenges is that the determination of discriminatory intent is largely formed by the trial court's perceptions at voir dire. *State v. Lopez*, 173 Wis. 2d 724, 729, 496 N.W.2d 617 (Ct. App. 1992). When the prosecutor states that he or she is relying on police reports, arrest or conviction records, or other information not produced by responses in voir dire, I do not see how the trial court can fulfill its duty at the third step to assess the credibility of that prosecutor without evaluating the information on which he or she is relying. Because the trial court did not engage in the analysis required at the third step, I cannot agree we should affirm the determination that Gregory did not establish purposeful discrimination.

¶ 26. I also do not agree with the majority that affirmance is appropriate because defense counsel did not request an adjournment in order to obtain the additional information that the prosecutor stated was the basis for the strike. Defense counsel did, immediately after hearing the prosecutor's explanation, state that it was based on matters not of record. Defense counsel may have intended to ask for an adjournment when the trial court interrupted to say to the prosecutor "I have to do it on the record you make." When the trial court then focused on what it believed Bell said in voir dire, defense counsel's response was again interrupted by the court in a manner conveying the court did not wish further argument. Moreover, the court did not separately consider the third step in the *Batson* analysis, which is the point at which a request for an adjourn-

ment to obtain and review the "outside" information would be appropriate.

¶ 27. When a trial court has not engaged in the required analysis in response to a *Batson* challenge and the record does not permit review by this court as a matter of law, the proper remedy is a remand to allow that to occur. *See, e.g., Jordan*, 206 F.3d at 201–02; *State v. Donaghy*, 769 A.2d 10 (Vt. 2000). In my view, at the postconviction hearing the trial court adequately addressed the prosecutor's stated reasons for the strike (that is, the information he was relying on that was not produced at voir dire) and determined they were race-neutral, and I conclude that determination is not clearly erroneous. Therefore, there is no need for a remand to address the second step.

¶ 28. However, I do not agree with the majority that the offer of proof made at the postconviction hearing shows no evidence relevant to the third step. I do agree that the focus in proving that the reasons given by the prosecutor are pretextual is on what the prosecutor knew about the potential juror when he or she made the strike; therefore, the accuracy of what the prosecutor knew is not necessarily relevant. Because I am writing in dissent, I do not analyze in detail what evidence Gregory would be allowed to present at an evidentiary hearing. However, I am persuaded that at least some of the material submitted by way of offer of proof is relevant to the prosecutor's intent.

¶ 29. For example, the reports of visits by law enforcement personnel to 1216 Wisconsin Avenue, upon which the prosecutor apparently relied,[3] do not

[3] The police visits occurred during 1996–98. The reasons on the report for the visits are for things such as service of process and investigation of a claim by a household member of burglary, theft or neighbor dispute. The only reference to drugs is on

indicate Dondre Bell lived at the address when the visits occurred, was involved in any of the incidents, or knew about them. Nonetheless, the prosecutor, according to his statement to the trial court, assumed Bell was not being truthful because he did not disclose more contact with the police by family members. If the prosecutor had no information indicating Bell lived at 1216 Wisconsin Avenue at the time of the police visits or knew of those visits, the prosecutor's statement to the court that Bell was not being truthful might simply be based on an unfounded assumption that Bell knew of the incidents, but it could also be evidence of pretext.

¶ 30. Were I writing for the majority, I would remand to allow the trial court to conduct a hearing at which Gregory would have the opportunity to establish that the prosecutor's stated reasons were a pretext for purposeful discrimination based on race and the trial court could then engage in the analysis required at the third *Batson* step. If the court determined that there were no purposeful discrimination based on race, it would affirm Gregory's conviction. If it determined that there were purposeful discrimination, the required remedy would be a reversal of the conviction and a new trial. *King*, 215 Wis. 2d at 309.

January 11, 1996, when a resident at that address reported that certain items were missing and the responding officer makes this comment: "Bell believes husband sold property for drugs . . . ."